WILLIAM J. HODGERT, Respondent, *v.* THE DELAWARE, LACKA-WANNA AND WESTERN RAILROAD COMPANY, Appellant.

First Department, January 25, 1924.

Railroads — action under Federal Employers' Liability Act to recover for personal injuries — plaintiff was run over by freight car which was set in motion, accidentally, while other cars in yards were being shifted — verdict in favor of plaintiff on theory that he was struck while crossing track is against evidence — error to submit to jury whether failure to have workable coupler on car was negligence.

In an action under the Federal Employers' Liability Act by an employee of a railroad to recover damages for injuries suffered when he was run over by a freight car which was set in motion accidentally while other cars were being shifted in the yard, the verdict in favor of the plaintiff, who was a railroad policeman, on the theory that the accident happened while he was crossing the track is contrary to the evidence, since the plaintiff's theory is supported almost entirely by his own testimony, while several disinterested witnesses for the defendant testified that the plaintiff and another were sitting on a plank laid across the track directly behind the freight car which ran over the plaintiff and that while they were sitting there the car was set in motion.

It was error for the court to submit the question of whether or not the failure to have a workable coupler on the car which struck the plaintiff was a negligent act in connection with the other facts relating to the cause of the accident, since the existence of a defective coupler could not have been a proximate cause of the injury in question.

APPEAL by the defendant, The Delaware, Lackawanna and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of March, 1923, upon the verdict of a jury for $40,000, and also from an order entered in said clerk's office on the 28th day of March, 1923, denying the defendant's motion for a new trial made upon the minutes.

*Douglas Swift* [*W. S. Jenney* with him on the brief], for the appellant.

*John C. Robinson* [*Morris A. Wainger* with him on the brief], for the respondent.

McAvoy, J.:

The plaintiff, according to the finding of the jury, was engaged in interstate commerce at the time of the injury, and, therefore, an action in his behalf under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143), was properly brought.

The injury, as related by plaintiff, came about in this wise: Plaintiff was employed by defendant to patrol and guard its railroad property, tracks and equipment in and adjacent to its yards near Scranton, Penn. His general duties, under the instructions that he received, as he described them, were to guard all railroad property inside and outside of a certain fence surrounding the yard, and "to watch the water tank to see that nobody did any damage to it." He was to walk on the ledge, a high place inside of the fence where the cars were, so that he could look out over the fence and see all the property. He was to examine between the strings of cars on the tracks to see that there was nobody in there harming the freight cars or setting them afire. In performance of this work, under these instructions, plaintiff was crossing a "storage" track known as No. 24, and was struck by a disabled car without a coupling which had been stored there. This car had been suddenly and accidentally started in motion when it was struck by the forward car of a string of about seven cars which were stored on the same track some distance in the rear. This string of cars had been shoved forward by a string of fifteen cars which were being shoved by a locomotive at the other end of the string. Plaintiff claims to have been previously assured by the man who gave him instructions as to his duties in the yard that there were not any cars moved in the yard, and he says that, during the day and a half that he had been there previous to his accident, no cars had been moved.

The defendant's brakeman who gave the signal which caused the collision that brought all the cars together, starting the standing cars, and causing the detached one to strike plaintiff, says that the string he was pushing back consisted of about fifteen cars, and that the bumping of these seven cars which had not been moved for some time was "just an accident." Plaintiff had been but two days in the yard when the injury occurred to him. His own description is as follows: "I left Wallace at his post and come

down along my post down to about 150 feet from the water tank which ended my post. There is a gate in the fence which signified that was the end of my post, and when I got down there Morgan was sitting down on a board that he had put there before I arrived into the yard, and I bid him the time of day, and talking about a few things at the yard, and went over the tracks and looked up and down to see that there was nothing unusual happening in between these strings of cars, and came back, and as I got about in the middle of the track two feet away from this car that had run me down, I heard a noise as if there was a crash, and I looked and saw this car and I jumped and I could not make it, and the next thing I knew I woke up and I was hollering for help, and Mr. Flynn picked me up and threw me across his shoulders, and the next thing I knew I arrived at the hospital, the Moses Taylor Hospital in Scranton."

The injuries which were occasioned are not disputed. Plaintiff will never be able to walk or stand again. His sufferings are constant and will continue to be so, and there is no contention by appellant that the verdict was excessive.

There is nothing now presented for review as to many of the issues which were decided at the trial; and of the litigated matters there contested these are now resolved: That the case was properly within the Federal Employers' Liability Act; that there was negligence on the part of defendant; that plaintiff was not precluded from recovery because of assumption of risk of the employment.

The contentions on appeal are that the verdict is against the weight of the evidence on the question as to whether or not plaintiff was sitting on the track at the time he was injured; and second that the court committed error in admitting evidence as to the defective condition of the coupling on the car that hit the plaintiff.

Appellant asserts that the description of the accident which has heretofore been outlined is improbable, because, since the crash that he heard was the impact between the string of cars that were being moved onto track 24 and the first car of the seven standing cars on the track, and since these cars had to move the distance intervening between the last one of those cars and the unattached car without the coupler, which struck the plaintiff, and that car had to move the distance between it and the plaintiff, while he had to clear the track, he would have had ample time, according to his description of the happening, to clear the track before the car reached the place where he was attempting to cross. There is nothing here, however, to indicate that this noise which he heard was the original impact against the seven cars,

rather than the impact of the end car of the seven cars against the unattached car without the coupler, which plaintiff said was only two feet away from him at the time he heard the crash and from which he was unable to escape as he made the jump to cross the track, and so inherent improbability of his claim in this respect may not be asserted.

The story of the accident which the defendant's witnesses describe as the true method of its happening states that the plaintiff and the guard Morgan were sitting together on a board placed across the rails of track 24 at the east end of the box car standing on that track. This was the most easterly car of the cars on that track. The board was placed close up to the end of the car, and one of the guards had placed an upright board leaning against the end of the car as a sort of back rest. There was no dispute that these boards were there and that Morgan was sitting on them when plaintiff first approached the locality and crossed this track. Plaintiff and Morgan, as defendant's witnesses assert, had been sitting on that board between the rails of the track with their backs toward the car for twenty minutes or half an hour before the accident happened. One had a paper which appeared to be a newspaper in his hands. While they were thus sitting, the car against which they were leaning was moved by the shunting of the locomotive attached to the other cars and the plaintiff thus received the injuries which are the subject of the suit. Morgan, who was supposed to be sitting with the plaintiff at the time of the impact and the motion of the car, escaped without any injury.

It was doubtless necessary in order to find a verdict for the plaintiff that it be found that he was not sitting in the manner described by defendant's witnesses at the end of the car, and if the overwhelming evidence indicated that he was so sitting, the verdict should be set aside as against the weight of evidence.

As stated above, his failure to hear the first crash of the moving of the cars against each other is not inherently improbable. The sounds and other distractions in the movements of a freight yard are not such as to render every distinct operation immediately audible, or if audible, attention may not always be directed to their significance. The vital improbability of plaintiff's version of the accident arises from the very nature of his injury. The plaintiff testified that: " As I got about in the middle of the track two feet away from this car that had run me down, I heard a noise as if there was a crash, and I looked and saw this car and I jumped and I could not make it, and the next thing I knew I woke up and I was hollering for help."

Doctor Reddel, a physician at the Moses Taylor Hospital in

Scranton, where the plaintiff was taken on the day of the accident, testified that the plaintiff's injury was exclusively an injury to his spine, which was broken, and that when he was brought to the hospital there was not any cut or abrasion of any kind on his body. This testimony was uncontradicted, although the plaintiff was recalled to the stand after the doctor testified. If the accident happened as the plaintiff said it did, it seems incredible that he would have sustained a broken spine without any cut or abrasion on his body. On the other hand, the injury he sustained was just what would be expected to result from an accident happening in the manner claimed by the defendant. If he was sitting between the rails on a board resting on the rails, with his back up against the end of the car, a sudden movement of that car might have doubled him up under the car and broken his spine without any other injury whatever to his body.

The evidence for the defendant on the question of how the accident happened was as follows:

Mr. Seymour, a police officer of the city of Scranton, saw the accident. At the time he was on duty outside the yard fence on a knoll at a point almost directly opposite the place where the accident happened, and about 300 feet therefrom. He was sitting on his horse and had a clear view of the scene of the accident. He saw the cars bump and saw them strike the plaintiff. At the time the car struck him the plaintiff was sitting with another man between the rails, at the end of the car, with his back to the car. The witness saw the two men sitting side by side in that position for a period of from twenty minutes to half an hour before the accident happened. One of them had a paper which looked to the witness like a newspaper. The one nearest the witness was hurt. The other apparently was not hurt and got up and ran away. The bump that moved the car was " not overly hard, not any harder than any other time." The car that hit the plaintiff was about three or four feet from the car next to it.

Mr. Stumm, a police officer of the city of Scranton, was on duty outside the yard fence on the afternoon in question. He was stationed on a post almost opposite the point where the accident happened. That afternoon he took his horse over to the railroad yard to give him a drink. He went through the fence gate and along a roadway close to the place of the accident. He saw the plaintiff and another man sitting on a board or plank across the rails of the track at the end of a box car with their backs up against the car. The witness did not see the accident. He proceeded along the roadway to the yard office, and about twelve minutes after he had seen the men sitting on the track an injured

man was carried up to the yard office, whom he recognized as one of the men he had seen sitting on the track.

Mr. Horan, a police officer of the city of Scranton, was on duty outside the yard fence on the afternoon in question. He was stationed at a point upon a hill from 200 to 300 feet from the yard office, and about 700 feet from the point where the accident happened. He had a good view of the scene of the accident, and saw two men sitting across the track at the end of a box car, facing toward him, and with their backs to the car. One of them had something white in his hand, but the witness could not tell from that distance whether it was a paper or not. He did not see the accident, but about five or six minutes after he had seen the men sitting on the track, he was in the yard office to get a drink, and at that time he heard hollering and an injured man was brought up to the office.

Mr. Cox was employed by the defendant as a mail clerk in the Kayser Valley shops on the day in question, and was an employee at the time of the trial. He was nineteen years old. He saw the accident. At that time he was walking with a bag of mail on a board walk that ran parallel with and outside the yard fence from the yard office westerly in the direction of the place of accident. When walking on the board walk he had a clear view over the top of the fence to the place where the accident happened. He saw two men sitting on the track, and just as he saw them the car was bumped and ran over them. He ran down to the double gate shown on the map and up the bank, and was the first one to reach the plaintiff and pick him up. The testimony of this witness was corroborated in a most effective manner by a statement which was brought out by plaintiff's counsel on the cross-examination of a subsequent witness, Jay. It developed on Jay's cross-examination that he had taken a statement in shorthand from Cox, and that he had his original notes with him. He was asked to read this statement, and he read it from his original notes as follows: " Q. Where do you live? A. 1256 St. Ann's Street. Q. What do you know about this guard Hodgert getting hurt on the eighteenth? A. I saw him sitting there. I guess the engine hit the box cars, and they got shoved along the track. The truck passed over him. Q. Where were you then? A. Walking down a board walk with the mail. Q. The board walk alongside the Kayser Valley main track? A. Yes. Q. Were you about opposite track 24, where these fellows were sitting? A. Yes. Q. Did you see this engine coming in or hear it coming in? A. How could I? There were about sixty box cars down at the other end. Q. Did you see the cars move? A. Yes. Q. Then

you went over to where the fellow lay. A. The guard ran away from him, and I ran over and picked him up out of the track. I did not want to see him get killed."

This statement of Cox was taken on August 23, 1922, five days after the accident happened.

There was also a so-called confession made to Mr. Jay, the short-hand reporter who was in business for himself, and who was employed by the defendant for the purpose of taking the statements of witnesses shortly after the accident. He was never regularly employed by the defendant, and was not in its employ at the time of the trial. He went to the hospital where plaintiff was lodged for the purpose of taking plaintiff's statement. He read his original shorthand notes taken in the presence of Burns, a claim investigator for defendant, and they read: "Q. [Mr. Burns]: Mr. Hodgert, we are from the D., L. and W. Railroad Company, and are making an investigation of your accident at Kayser Valley on the 18th, and we were wondering if you could tell us about what happened to you? A. I will tell you as far as I know. Q. Yes. A. I was on police duty. My post ran from the end of the fence — do you know where the coal mine is? Q. Yes. A. From the fence into the gate where the car is. I was making my round. I had to meet the other fellow — they come up to the gate — up to the other gate — we stood there awhile, and I bid him the time of day, and we got a board and sat on the track. He sat down and I sat with him too. The next thing I heard the cars coupling and I tried to jump but could not get out of it. Q. Who was the other fellow? A. Morgans."

Plaintiff denied that he made such a statement on being called as a witness and claimed that he never remembered Jay, the stenographer, ever coming to the hospital.

There was also testimony by a witness named Murphy, one of the switching crew, employed in the yard at the time of the accident, who said that shortly after the accident he was in the yard office and heard the plaintiff, who was lying there, say: " He got hurted and he was lying down on a board under the car."

Doctor Reddel, who was a physician in the Moses Taylor Hospital in Scranton, Penn., testified that he was told by plaintiff while plaintiff was in the hospital at Scranton that he was sitting on the railway track on a board with his back to the car, and the car was bumped and ran over him, doubling him up.

Plaintiff being practically his only witness as to the facts showing negligence on the part of defendant, and the physical facts of his injury, and the testimony of many witnesses contradicting him, both as to the manner of the happening of the accident, and as to

the claimed confession, it seems to us that to hold that the verdict is in accord with the weight of the evidence would be to ignore manifest and usual standards of determination of how preponderance is to be discovered.

There is here but the testimony of plaintiff under the influence of self-interest, wholly uncorroborated, and in many respects relating an inherently improbable tale, opposed by six legally disinterested witnesses, two of whom were interested in the sense that they were employees of the defendant. The testimony of these witnesses is entirely contradictory of the version of the accident given by plaintiff, or contains statements that the plaintiff admitted that he was sitting on the track at the time of the accident. This proof by oral testimony is supported, moreover, by the physical feature of the plaintiff's injury.

It seems to us that the conclusion is irresistible that the plaintiff was sitting on a board, placed across the track, at the time of the accident, and a finding by the jury that he was injured in the manner described by him must have been brought about by the unusually severe injuries which resulted to plaintiff, which caused sympathy for plaintiff's plight, to affect the jury's judgment on the facts.

While it is not necessary to consider the second point urged as ground for reversal, nevertheless, it was fully presented by the briefs and for the new trial it ought to be authoritatively decided.

The error complained of consisted in admitting proof that there was a defective coupler on the car which struck the plaintiff. If this defect fell within the Federal Safety Appliance Acts (27 U. S. Stat. at Large, 531, chap. 196, as amd.) the absence of the required coupler would have been itself proof of negligence, and recovery would be inevitable.

The trial court, however, declined to hold that the Federal Safety Appliance Acts applied to a car standing in the storage yards for repair, but submitted the question of whether or not the failure to have a workable coupler on the car was a negligent act in connection with the other facts relating to the cause of the accident. Thus it must have been the jury's understanding of the law that if the coupler on the car were defective, they could find that it was at least a contributing or concurrent proximate cause of the accident.

This was error. The existence of a defective coupler upon a car, to be a basis for a finding of either negligence or a violation of the Federal Safety Appliance Acts, must have been a proximate cause for the occurrence out of which the injury arose. " There must be a causal relation between the fact of delinquency and the

fact of injury." (*Lang* v. *New York Central R. R. Co.*, 255 U. S. 455.)

The delinquency claimed in this case was shunting moving cars about the yard against standing cars without warning to employees whose duties might bring them within the sphere of operations. The collision of the moving cars against the car which struck plaintiff was unintended and no part of the operation required or presupposed the presence of a coupler on the damaged car. The sole cause of the motion was the impact; the defect of the coupler was an incident or condition of the motion. An agency is not effective as a cause unless it was instrumental in bringing about the collision — result of itself. The evidence as to the defective coupler should have been excluded.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event, on the ground that the verdict is against the weight of the evidence.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.